[No. B186951. Second Dist., Div. Four. Aug. 15, 2006.]

JASON ANTEBI, Plaintiff and Appellant, v.
OCCIDENTAL COLLEGE et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III A–C, E and IV of the Discussion.

COUNSEL

Turner Green Afrasiabi & Arledge and Christopher W. Arledge for Plaintiff and Appellant.

Musick Peeler & Garrett, Stuart D. Tochner and Kent A. Halkett for Defendants and Respondents.

OPINION

**EPSTEIN, P. J.**—Jason Antebi appeals an order dismissing his lawsuit following sustaining of a demurrer. The suit was against the college where he was disciplined as a student, the members of its governing board, and certain named individuals. He contends the court erred in finding he was limited to judicial review through administrative mandamus pursuant to Code of Civil Procedure section 1094.5[1] and that he should have been permitted to pursue his civil claims for tort and violation of statute. In the published portion of this opinion, we conclude that the "Leonard Law" (Ed. Code, § 94367 et seq.) does not apply to appellant since he was no longer enrolled as a student when he brought suit. In the unpublished portion of this opinion, we conclude that one of his causes of action, for defamation, is distinct from the disciplinary proceedings and was sufficiently pleaded against the college and one individual, and conclude that in all other respects, the order of dismissal was proper and is affirmed.

## FACTUAL AND PROCEDURAL SUMMARY

Antebi entered Occidental College (Occidental) in the fall of 2000 as a full-time student. He graduated from this private institution in 2004. While a student there, he was a self-described "shock jock" on a radio program broadcast by the student-run radio station. This show consisted of political satire, parody, provocative humor, and mockery of people of every size, religion, gender, or political affiliation.

The following summary is taken from the first amended complaint, which is the charging pleading, and reasonable inferences from that pleading. Antebi's role as an outspoken disk jockey and some decisions he made as a member of the student council caused him to be disliked by some students.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

Three of them published statements that he was a racist and an anti-Semite, and that he sexually harassed women. He reported the acts of these three students to Frank Ayala, the dean of students, and Sandra Cooper, the Occidental College general counsel. Ayala and Cooper dismissed his complaint because the actions by the other students did not constitute harassment or defamation. They told him to "fight [his] own battles."

Angered, Antebi used his radio show to fire back against the three students. On March 11, 2004, he made insulting comments attacking satirical characters based on these students and others, and engaged in sexual discussions. Within two weeks, the three students filed separate sexual harassment complaints against him based upon his on-the-air statements on the March 11 broadcast. By then, Ayala had removed Antebi from the show.

Maryanne Horowitz, Occidental's title IX[2] officer, conducted an investigation of the complaints against Antebi. She shared summaries of all the complaints with the students who had complained against Antebi. The investigation also covered allegations that Antebi had threatened physical violence and retribution in e-mails to the gay community, and that he had defaced brochures with terms derogatory towards women.

On March 22, 2004, as Cooper stood in an office at Occidental, she yelled into a public hallway at Antebi that he was a "racist," "sexist," "misogynist," "anti-Semite," "homophobe," "unethical" and "immoral" "trash." Numerous persons heard the comments.

On March 29, 2004, Occidental president Ted Mitchell transmitted a campus-wide e-mail expressing concern over the increasing sexual and racial harassment on campus. He did not accuse anyone specifically, nor did he cite a specific harassing event.

Horowitz submitted her formal report on the sexual harassment complaints on April 12, 2004. She concluded that Antebi's March 11 program violated Occidental's policy against hostile environment and sexual and gender harassment. She recommended that Antebi apologize to the complainants, or to the Occidental community, and suggested that he seek counseling.

Ayala accepted the recommendations and ordered Antebi to apologize to the complainants or face "alternative disciplinary action." Antebi refused. He

---

[2] Title IX of the Educational Amendments of 1972 prohibits discrimination on the basis of sex in educational institutions receiving federal financial assistance. (20 U.S.C. § 1681 et seq.)

appealed those findings on May 6, 2004. Rameen Talesh, the associate dean of students, conducted a disciplinary conference with Antebi to discuss acts related to the title IX investigation. On May 14, 2004, Talesh found Antebi guilty of harassment, sending "spam" e-mail and lying to Cooper. Talesh ordered disciplinary censure until May 17, 2004. The findings stated that Antebi could appeal the decision by following the appeals section of the student code of conduct. Antebi appealed to President Mitchell and the board of trustees nearly a month later, after the seven-day deadline specified in the student handbook. There is no information in the record about the outcome of this appeal.

In March 2005, Antebi brought this action in superior court against Occidental, its board of trustees, Ayala, Horowitz, Mitchell, Cooper, Talesh, and James Trandquada, Occidental's director of communications. Respondents demurred, and Antebi filed a first amended complaint. Respondents again demurred. The trial court sustained the demurrer without leave to amend because Antebi had not exhausted his internal remedies and, even if he had done so, his exclusive remedy was by administrative mandamus.

Antebi appeals as to all respondents from the order of dismissal of seven out of eight causes of action: (1) defamation; (2) violation of Civil Code sections 51 and 52.1; (3) invasion of privacy; (4) intentional infliction of emotional distress; (5) negligence; (6) breach of fiduciary duties; and (7) declaratory relief under California's Leonard Law (Ed. Code, § 94367 et seq.).

## DISCUSSION

### I–III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### A–C*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D

 Antebi argues the administrative mandamus rule does not apply to his Leonard Law claim. The Leonard Law, Education Code section 94367 et seq.,

---

*See footnote, *ante*, page 1542.

prohibits private universities from disciplining students for speech that would be protected by the First Amendment if made off campus. Specifically, Education Code section 94367, subdivision (a) provides that "[n]o private postsecondary educational institution shall make or enforce any rule subjecting any student to disciplinary sanctions solely on the basis of conduct that is speech or other communication that, when engaged in outside the campus or facility of a private postsecondary institution, is protected from governmental restriction by the First Amendment to the United States Constitution or Section 2 of Article 1 of the California Constitution."

■ A plaintiff cannot avoid the administrative mandamus rule by simply alleging constitutional violations. (See, e.g., *Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 645 [47 Cal.Rptr.2d 29].) In this case, however, Antebi was specifically authorized by statute to bring his Leonard Law claim in the trial court without having to seek administrative mandamus.

■ Even with this exception to the exclusivity of a section 1094.5 proceeding for a Leonard Law claim, Antebi lacks standing to pursue it. He graduated from Occidental before filing this action. Education Code section 94367, subdivision (b) provides: "*Any student enrolled* in a private postsecondary institution that has made or enforced any rule in violation of subdivision (a) may commence a civil action to obtain appropriate *injunctive and declaratory relief* as determined by the court." (Italics added.) " 'Where possible, "we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law . . . ." ' [Citations.]" (*Major v. Silna* (2005) 134 Cal.App.4th 1485, 1493 [36 Cal.Rptr.3d 875].) Not surprisingly, both sides argue that the plain meaning of the provision, "[a]ny student enrolled," supports its position. (§ 94367, subd. (b).) Antebi asserts that the language requires only that the student be enrolled at the time of the unlawful act; respondents argue it applies the law only to students enrolled at the time the action is filed.

■ We agree with respondents, for three reasons. First, the plain language of the statute—"any student *enrolled* . . . may commence a civil action"— indicates that the student must be enrolled when the legal action begins. (Ed. Code, § 94367, subd. (b), italics added.) Second, the Legislature easily could have extended application of the statute with the words "any student enrolled or *who was enrolled*" or by a similar formulation. The inference from the fact that it did not do so is that the remedy is afforded only to currently enrolled students. Finally, this reading is consistent with the structure of the statute as a whole. ■ "Significance should be given, if possible, to every word of

an act." (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) Education Code section 94367, subdivision (b) provides only injunctive and declaratory relief, which would not benefit a graduated student. If the Legislature intended to extend the applicability of the Leonard Law to graduated students, such as Antebi, it would have permitted the recovery of damages to remedy past wrongs.

### E*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### V

Respondents claim, and we agree, that the board of trustees of Occidental cannot be liable under Antebi's causes of actions. The trustees of a nonprofit educational corporation are recognized as its directors, and a director of a nonprofit corporation cannot be personally liable for the debts, liabilities, or obligations of the corporation. (*Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 10 [101 Cal.Rptr. 499].) Given that Antebi filed the present action against Occidental as a corporation and the trial court took judicial notice that a board of trustees of nonprofit educational organization was its directors, the action against Occidental's board of trustees was properly dismissed.

Because only the defamation cause of action survives the demurrer, only Occidental and Cooper, the individual who allegedly made the hallway statements, can be held liable.

---

*See footnote, *ante*, page 1542.

## DISPOSITION

The judgment is reversed as to the cause of action for defamation against Cooper and Occidental College. In all other respects, the judgment is affirmed. Each party is to bear its costs.

Suzukawa, J., and Hastings, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied October 25, 2006, S146525. Moreno, J., was of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.