[No. B202053. Second Dist., Div. Three. Jan. 30, 2008.]

THE RIGHT SITE COALITION, Plaintiff and Appellant, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

**COUNSEL**

The Silverstein Law Firm and Robert P. Silverstein for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis, Patrick E. Breen, Patrick A. Perry and Emily L. Murray for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant The Right Site Coalition (Coalition) appeals an order denying its motion for a preliminary injunction. The Coalition seeks to prevent defendants and respondents Los Angeles Unified School District and the Board of Education for the Los Angeles Unified School District (LAUSD) from demolishing 49 units of housing to make way for a new school.[1]

The determination whether to issue a preliminary injunction requires the trial court to exercise its discretion by considering and weighing " 'two interrelated factors,' specifically, the likelihood that plaintiffs will prevail on the merits at trial, and the comparative harm to be suffered by plaintiffs if the injunction does not issue against the harm to be suffered by defendants . . . if it does." (*King v. Meese* (1987) 43 Cal.3d 1217, 1226 [240 Cal.Rptr. 829, 743 P.2d 889].) The more likely it is that plaintiffs will ultimately prevail, the

---

[1] An order denying a preliminary injunction is appealable. (Code Civ. Proc., § 904.1, subd. (a)(6); *Socialist Workers etc. Committee v. Brown* (1975) 53 Cal.App.3d 879, 885, fn. 4 [125 Cal.Rptr. 915].)

less severe must be the harm that they allege will occur if the injunction does not issue. (*Id.* at p. 1227.) Further, "if the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that party's inability to show that the balance of harms tips in his favor. [Citation.]" (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 447 [261 Cal.Rptr. 574, 777 P.2d 610].)

In the instant case, the trial court denied the application for preliminary injunction solely on the ground the balance of hardships favored LAUSD. The trial court erroneously declined to consider the potential merit of the Coalition's claims, believing it was unnecessary to address that factor. Therefore, the order is reversed and the matter is remanded to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Earlier proceedings.*

By way of background, in October 2005, LAUSD approved a mitigated negative declaration (MND) for the subject project, a new school on a 3.35-acre site in Echo Park, bounded by North Alvarado on the east, Santa Ynez Street on the south and Mohawk Street on the west.[2]

The Coalition successfully challenged the adoption of the MND.[3] The trial court entered judgment directing the issuance of a writ of mandate requiring LAUSD to prepare an environmental impact report (EIR) for the project.

In compliance with the judgment, LAUSD prepared an EIR, which was certified by LAUSD's board on June 26, 2007.

---

[2] " 'Mitigated negative declaration' means a negative declaration prepared for a project when the initial study has identified potentially significant effects on the environment, but (1) revisions in the project plans or proposals made by, or agreed to by, the applicant before the proposed negative declaration and initial study are released for public review would avoid the effects or mitigate the effects to a point where clearly no significant effect on the environment would occur, and (2) there is no substantial evidence in light of the whole record before the public agency that the project, as revised, may have a significant effect on the environment." (Pub. Resources Code, § 21064.5.)

[3] The Coalition is an unincorporated California association consisting of homeowners, property owners, residents and tenants who will be affected by the project.

2. *The instant action to invalidate the approval of the EIR.*

On July 20, 2007, the Coalition filed a challenge under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) to the certification of the EIR. The Coalition alleged, inter alia, the EIR was merely a post hoc rationalization for a decision that already had been made, the EIR failed to consider a reasonable range of alternatives and it failed to evaluate properly the project's significant impacts on air quality, traffic, pedestrian safety, public services, land use, cultural and historic resources, population and housing, and its cumulative impacts.

On August 1, 2007, the Coalition applied ex parte for a temporary restraining order (TRO) and an order to show cause regarding preliminary injunction, seeking to prevent LAUSD from demolishing nearly two city blocks with 49 units of residential housing in order to maintain the status quo pending a hearing on the preliminary injunction.

On August 1, 2007, the trial court granted a TRO and scheduled a hearing for August 30, 2007, on the application for preliminary injunction.

In seeking a preliminary injunction, the Coalition asserted it had a reasonable probability of success on the merits of its CEQA petition, arguing, inter alia, LAUSD had violated the requirement of a finite project description, the EIR's population and housing analyses were fatally flawed, as were the population and housing cumulative impacts analyses and the traffic and pedestrian safety analyses, and LAUSD had violated CEQA by already committing itself to the project. In addition, the Coalition claimed the balance of harm weighed in the Coalition's favor because denial of the preliminary injunction would lead to demolition of affordable housing units, resulting in irreparable harm.

On August 30, 2007, the matter came on for hearing. In opposing the issuance of a preliminary injunction, LAUSD argued, inter alia, "[t]his isn't existing housing stock to begin with because these units have been unoccupied for over a year now. They are not housing, and, regardless of what [the Coalition] may want, it is extremely unlikely they will ever be utilized as housing again regardless of the outcome of this case."

LAUSD also asserted any delay would result in increased construction costs of $106,725 per week, based on a construction cost escalation factor of 12 percent per year and a total construction cost of $46.2 million. In addition, a delay would require LAUSD to incur additional costs of $3,658 per week for property management and site security.

At the conclusion of the hearing, the trial court denied the Coalition's motion for issuance of a preliminary injunction, stating "I just can't see the harm in this situation." In other words, the trial court ruled the balance of hardships favored LAUSD. Despite the Coalition's arguments, the trial court refused to consider the likelihood of the Coalition's success on the merits of its CEQA petition, stating "I don't think it's necessary."

The trial court stayed the demolition until September 7, 2007, to allow the Coalition "the opportunity to file an emergency writ."

3. *Proceedings in this court.*

On September 10, 2007, the Coalition filed a petition for writ of mandate, seeking to set aside the trial court's order denying a preliminary injunction, as well as a stay of demolition activity. That same day, this court denied the petition "without prejudice to filing an appeal and a petition for writ of supersedeas."

On September 11, 2007, the Coalition filed notice of appeal from the August 30, 2007 order denying its motion for preliminary injunction.

On September 13, 2007, the Coalition filed a petition for a writ of supersedeas, seeking to stay the August 30, 2007 order and reinstate the TRO pending resolution of the appeal. That same day, this court issued a temporary stay.

On October 23, 2007, this court granted the petition for writ of supersedeas conditioned upon an accelerated schedule for filing the record and the briefs on appeal, and set oral argument on the appeal for January 15, 2008.

## CONTENTIONS

The Coalition contends: the trial court erred in denying the motion for preliminary injunction without considering the likelihood the Coalition will prevail on the merits of its case at trial; the Coalition made a strong showing of irreparable harm; LAUSD's harm arguments are illusory; the Coalition made a strong showing of probable success on the merits of its CEQA petition; the project is also unlikely to succeed because of the city's opposition to the site; and no bond should be required as a condition of granting the preliminary injunction.

## DISCUSSION

1. *General principles.*

■ In exercising its discretion whether to issue a preliminary injunction, "the trial court *must consider 'two interrelated factors,'* specifically, the

likelihood that plaintiffs will prevail on the merits at trial, and the comparative harm to be suffered by plaintiffs if the injunction does not issue against the harm to be suffered by defendants . . . if it does." (*King v. Meese, supra*, 43 Cal.3d at p. 1226, italics added; accord, *Butt v. State of California* (1992) 4 Cal.4th 668, 677–678 [15 Cal.Rptr.2d 480, 842 P.2d 1240].)

The likelihood of plaintiffs' ultimate success on the merits "does affect the showing necessary to a balancing-of-hardships analysis. That is, *the more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they allege will occur if the injunction does not issue*. This is especially true when the requested injunction maintains, rather than alters, the status quo. [Citation.] . . . [I]t is the mix of these factors that guides the trial court in its exercise of discretion." (*King v. Meese, supra*, 43 Cal.3d at p. 1227, italics added; accord, *Butt v. State of California, supra*, 4 Cal.4th at p. 678.) The presence or absence of these interrelated factors "is usually a matter of degree, *and if the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that party's inability to show that the balance of harms tips in his favor*. [Citation.]" (*Common Cause v. Board of Supervisors, supra*, 49 Cal.3d at p. 447, italics added.)

> 2. *Trial court erred in refusing to consider the likelihood of the Coalition's success on the merits.*

The reporter's transcript of the hearing on the preliminary injunction reveals the trial court expressly declined to address the likelihood of the Coalition's success on the merits, despite the attempts of Mr. Silverstein, the Coalition's counsel, to have the trial court focus on that crucial issue. The transcript contains the following colloquy:

"Mr. Perry [for LAUSD]: First of all, your honor, *with respect to the likelihood of success on the merits, I don't think we even get there*. I don't think that in the balancing of harms that petitioner can show any cognizable harm whatsoever with respect to proceeding with the school project at this time. The only harm that the petitioner has identified and—

"The Court: See, this is where I'm—maybe it's my fault. Maybe I'm a little confused. We're here today just to determine whether the houses should stay there or not.

"Mr. Perry: Correct.

"The Court: I'm not ruling at this point on the sufficiency of the E.I.R. I have an opinion on whether or not you'll be ultimately successful or not, but I thought I was just ruling on that and not the big picture, and you are both arguing the big picture to me.

"Mr. Perry: *All I am arguing, your honor, is the harm and the issue of harm—*

"The Court: Okay. I understand that.

"Mr. Silverstein [for the Coalition]: . . . *Your Honor is required at this point on this hearing to actually consider the evidence that's presented in the arguments because it's a two-part test.*

"The Court: *Well, I understand what you're saying, but it's not just that.*

"Mr. Silverstein: *No, No. It's a combination. It's a combination.*

"Mr. Perry: As I indicated, *we don't really get to likelihood of success on the merits.* It's a two-part test, *and they don't even pass the first part of the test which is the harm.* [¶] . . . [¶]

"Mr. Perry: Any delay is prejudicial, your honor, and that harm clearly balances and outweighs any harm the petitioner has been able to demonstrate. That gets to the harm issue. *The merits I can address as well. Like I said, I don't think it's necessary* because—

"The Court: *I don't think it's necessary either.* [¶] . . . [¶]

"Mr. Silverstein: . . . [¶] And Mr. Perry is incorrect that we don't even, as he says, get to the merits because of the harm issue. First of all, it's not a sequential issue. The court looks at both issues, so it's not like we won't even consider that. *As a matter of fact, it's the opposite. There is an inverse relationship. The cases say, and we've cited them, . . . that the greater the likelihood of prevailing—we only have to prevail on one issue—the less harm needs to be showed.* [¶] . . . [¶]

"The Court: Okay. I've listened to enough at this point in time. Nothing has changed my mind. I just can't see the harm in this situation, Mr. Silverstein. Your motion is denied." (Italics added.)

Given this record, we cannot indulge in the presumption that in making its ruling the trial court considered all of the relevant factors because we have an affirmative record to the contrary.[4] Here, the Coalition, in its moving papers and at oral argument, duly emphasized to the trial court that it was required to *weigh* two *interrelated* factors, i.e., the potential merit of plaintiff's claims and the relative interim harm to the parties from issuance or nonissuance of the injunction. (*Butt v. State of California, supra,* 4 Cal.4th at pp. 677–678.) LAUSD, in turn, incorrectly argued that if a plaintiff cannot pass the first part of the two-part test, i.e., harm from denial of a preliminary injunction, there is no need to address the potential merit of a plaintiff's claims.

■ The trial court, persuaded by LAUSD's arguments, refused to consider the likelihood the Coalition ultimately would prevail on its claims. The trial court's denial of the preliminary injunction, without any consideration of the potential merit of the Coalition's claims, was clearly erroneous.

The remaining issue is the appropriate disposition in light of the trial court's failure to consider the potential merit of the Coalition's claims.

3. *Trial court's error requires reversal and remand for a redetermination of the application for preliminary injunction.*

Normally, "[w]hen a trial court denies an application for a preliminary injunction, it *implicitly* determines that the plaintiffs have failed to satisfy either or both of the 'interim harm' and 'likelihood of prevailing on the merits' factors. On appeal, the question becomes whether the trial court abused its discretion in ruling on both factors. Even if the appellate court finds that the trial court abused its discretion as to one of the factors, it nevertheless may affirm the trial court's order if it finds no abuse of discretion as to the other." (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286–287 [219 Cal.Rptr. 467, 707 P.2d 840], new italics added, original italics omitted.) However, in the instant case, because the trial court refused to

---

[4] " 'A judgment . . . of the lower court is *presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent,* and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193], italics added.)

consider the "likelihood of prevailing on the merits" factor, we do not review the trial court's ruling under the deferential abuse of discretion standard.

*King v. Meese, supra*, 43 Cal.3d 1217, is directly on point. There, the trial court denied the plaintiffs' motion for preliminary injunction, finding that a balance of hardships favored the defendants. (*Id.* at p. 1225.) "*Without considering the merits*, the trial court found that the balance of hardships favored defendants, and therefore denied the injunction." (*Id.* at pp. 1226–1227, italics added.)

With respect to the trial court's failure to consider the merits, the Supreme Court ruled: "*Normally, it would be appropriate to remand the case to the trial court for consideration of the latter question.* However, plaintiffs have argued, and we agree, that there exist no contested factual questions necessary to resolve the case. In addition, the legal issues have been exhaustively briefed by the parties and numerous amici. *In light of these factors and the importance of the case, we take the unusual, but practical, step of reaching and resolving the merits ourselves.*" (*King v. Meese, supra*, 43 Cal.3d at p. 1228, italics added.)

*King v. Meese* involved an action to restrain the enforcement of a statute that made it an infraction for a motorist stopped for a moving violation to fail to provide proof of financial responsibility. (*King v. Meese, supra*, 43 Cal.3d at pp. 1220–1221.) The substantive issue presented there was whether said statute, "when considered in relation to the relevant provisions of the Insurance Code pertaining to automobile insurance, fails to provide drivers with adequate procedural due process of law." (*Id.* at p. 1220.)

Unlike *King v. Meese*, which presented a pure question of law on a significant issue of statewide importance, the instant case involves an ordinary challenge to the sufficiency of an EIR for a local school construction project. Under the circumstances, there is no need for this court to usurp the function of the trial court by ruling on the merits in the first instance.

We decline to address the potential merits or to determine whether a preliminary injunction should issue because it is the role of this court to review the trial court's exercise of its discretion in applying and weighing the two interrelated factors, rather than to exercise discretion in the first instance. To reiterate, the likelihood of plaintiffs' ultimate success on the merits "does affect the showing necessary to a balancing-of-hardships analysis. That is, *the*

*more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they allege will occur if the injunction does not issue. . . . [I]t is the mix of these factors that guides the trial court in its exercise of discretion."* (*King v. Meese, supra,* 43 Cal.3d at p. 1227, italics added.)

Moreover, at this juncture if we were to address the Coalition's likelihood of prevailing on the merits, any comments by this court would cast a great shadow over the trial on the merits of the CEQA petition. Even if this court were to emphasize its analysis was solely for purposes of determining whether a preliminary injunction should issue, an appellate decision discussing the Coalition's likelihood of success on the merits inevitably would influence the outcome of the ultimate trial on the merits.[5]

For all these reasons, we decline to rule on the merits in the first instance. Instead, we remand the matter to the trial court to redetermine the application for preliminary injunction, with due consideration to the " 'two interrelated factors,' specifically, the likelihood that plaintiffs will prevail on the merits at trial, and the comparative harm to be suffered by plaintiffs if the injunction does not issue against the harm to be suffered by defendants . . . if it does." (*King v. Meese, supra,* 43 Cal.3d at p. 1226.)

### 4.   *Remaining issues not reached.*

It is unnecessary to reach any remaining issues presented on appeal, including any alleged opposition by the City of Los Angeles to LAUSD's application to vacate Marathon Street in furtherance of the project.

Lastly, the Coalition's contention that no bond should be required as a condition of granting the preliminary injunction is not properly before this court. Whether the Coalition should be relieved of the bond requirement will have to be addressed by the trial court in the first instance, and the applicability of the bond requirement will arise only if the trial court determines that a preliminary injunction is warranted. We decline to issue an advisory opinion as to whether the trial court should dispense with the bond requirement.

---

[5] With respect to the substantive issues in this case, courts are "not to determine whether the EIR's ultimate conclusions are correct but only whether they are supported by substantial evidence in the record and whether the EIR is sufficient as an information document." (*Association of Irritated Residents v. County of Madera* (2003) 107 Cal.App.4th 1383, 1391 [133 Cal.Rptr.2d 718].) " *'The appellate court reviews the administrative record independently; the trial court's conclusions are not binding on it.'* " (*Id.* at p. 1390, italics added.)

## DISPOSITION

The order denying a preliminary injunction is reversed. The matter is remanded to the trial court to reconsider the Coalition's application for preliminary injunction, guided by the principles set forth in this opinion. Pending the determination of the application for preliminary injunction, the temporary restraining order previously issued shall remain in full force and effect. The Coalition shall recover its costs on appeal.

Croskey, J., and Kitching, J., concurred.