[No. B229949. Second Dist., Div. Three. June 15, 2011.]

KATRINA YU, Plaintiff and Appellant, v.
UNIVERSITY OF LA VERNE, Defendant and Respondent.

COUNSEL

Law Offices of Stephanie A. Sperber and Stephanie A. Sperber for Plaintiff and Appellant.

Musick, Peeler & Garrett, Stuart W. Rudnick and Geoffrey C. Brown for Defendant and Respondent.

OPINION

**KITCHING, J.**—

## INTRODUCTION

Plaintiff Katrina Yu appeals an order denying her motion for a preliminary injunction against defendant University of La Verne (the University). We affirm.

Yu, a law student at the University, was charged by the University with plagiarism and academic dishonesty. She was convicted of those charges by a three-person panel known as the "Judicial Board." Yu then appealed to Allen K. Easley, the dean of the University's college of law (the Dean). The Dean not only affirmed the Judicial Board's decision, he increased the sanctions imposed on Yu.

Yu contends that the Dean's decision to increase her punishment violated Education Code section 94367 (section 94367). This statute prohibits private universities from disciplining students solely on the basis of speech that would be protected from governmental restriction by the federal and state Constitutions if made off campus.

Yu failed to meet her burden of showing the likelihood that she would prevail on the merits of her claim. She did not show that the Dean's decision to increase her punishment was based solely on her exercise of free speech rights. The trial court therefore did not abuse its discretion in denying Yu's motion for a preliminary injunction.

## FACTS

### 1. *Yu's Contract Drafting Assignment*

In the spring of 2010 Yu was in her final semester of law school at the University, which is a private institution. During that semester she took a

contracts drafting class with Professor Daniel. In March 2010 Professor Daniel asked the students in the class to prepare a contract for a hypothetical client.

The assignment required students to work in teams as "cocounsel." Yu, H.A. and J.W. worked together as a team. Professor Daniel asked this team to prepare a coffee-supply contract on behalf of a seller. A.K. was assigned the task of playing the role of "opposing counsel."

Yu found a coffee-supply contract on the Internet, which she forwarded by e-mail to H.A. and J.W. The contract Yu prepared for the class included provisions that were in the Internet contract and provisions prepared by H.A.

### 2. *The Judicial Board Finds Yu Guilty of Plagiarism and Academic Dishonesty*

In May 2010, a few days before the law school's graduation ceremony, Yu was notified by an assistant dean that she was being investigated for plagiarism and academic dishonesty. Yu was offered a "plea bargain" by the University, which she declined.

Yu later learned that H.A. and A.K. were also under investigation for plagiarism and academic dishonesty. H.A. and A.K. accepted their plea bargains. J.W. was not charged with any wrongdoing.

On August 17, 2010, the University brought formal charges of plagiarism and academic dishonesty against Yu. A trial was held on September 1, 2010, before a Judicial Board that consisted of two faculty members and one student member. The case against Yu was presented by a "special prosecutor" who was a faculty member.

On September 2, 2010, Yu received the Judicial Board's decision finding her guilty. Although the special prosecutor had asked the Judicial Board to expel Yu from the law school, the Judicial Board imposed a lesser punishment, namely that Yu received no credit for the contracts drafting class and a grade of 0.0 was entered in her academic record.

### 3. *Yu's Appeal to the Dean*

Yu appealed the Judicial Board's decision to the Dean. The appeal consisted of a letter from Yu's attorney.

Under the Manual of Academic Policies and Procedures (the MAPP) of the University's college of law, the Dean may reverse a decision of the Judicial

Board only if the Dean determines that "no reasonable person" would have issued the decision or if newly discovered evidence justifies a new hearing. The MAPP further provides: "If the Dean concludes that a different sanction is justified, he or she may impose a greater or lesser sanction than that imposed by the Judicial Board."

Yu made four main arguments to the Dean: (1) she was singled out for prosecution when other classmates who engaged in similar conduct were not prosecuted;[1] (2) Professor Daniel's syllabus was ambiguous about what "use of form agreements" meant; (3) the definition of plagiarism in the MAPP was unclear; and (4) Yu did not copy the work of another student, rather that student copied her work. She also presented character evidence.

On October 5, 2010, in a single-spaced three-page letter, the Dean rejected Yu's appeal. The Dean also increased the sanctions imposed on Yu by suspending her for the remainder of the academic year and by the insertion of a formal letter of censure in Yu's file.

Because the basis for the Dean's decision is critical to our analysis, we shall quote at length from the Dean's letter. With respect to the Judicial Board's finding of guilt, the Dean stated the following: "My decision on this appeal is limited by the terms of the MAPP, which allow me to overturn the finding of guilt only if I determine that no reasonable person could make the finding of guilt. A reasonable person could find from the evidence presented that the prohibition against use of form agreements in the student's final work product was clear, that the definition of plagiarism was clear, and that Ms. Yu copied significant portions of her final work product from form agreements and from the work of another student, in violation of both Professor Daniel's syllabus requirements and the MAPP plagiarism rules. There is also evidence from which a reasonable person could conclude that the prohibition on use of form agreements and collaboration among students applied only to the final graded work product, so that evidence of possible collaboration or use of form agreements in earlier drafts by other students was not relevant and was properly excluded. The bald assertion in a letter of appeal that Professor Daniel has had a history of difficulties with certain students and therefore singled out Ms. Yu is both inadequate and insufficient. Whether or not Professor Daniel had difficulties with other students has no bearing on whether Ms. Yu violated course rules and plagiarism rules. Furthermore, even if other students in Professor Daniel's class committed plagiarism and/or violated her course rules, but were not prosecuted, and there does not appear

---

[1] Appellant's opening brief alleged that race played a role in the University's decision to charge Yu with misconduct. Yu, H.A., and A.K. who are Asian, were charged with misconduct, while J.W., who is Caucasian, was not. In her appeal to the Dean, however, Yu did not specifically raise the issue of race.

to be any competent evidence to support this assertion, that does not excuse Ms. Yu's offense. Cheating does not become acceptable conduct because others engaged in it and were not caught. Clear rules do not become unclear simply because some students might choose to ignore them."

The Dean stated the following regarding the punishment imposed on Yu: "With respect to the sanction recommended by the Judicial Board, the Board was apparently influenced in its recommendation by the fact that two other students in Professor Daniel's class were also charged with plagiarism and pled guilty, accepting summary dispositions that involved sanctions comparable to that recommended for Ms. Yu. The opportunity to accept a similar summary disposition was also offered to Ms. Yu. She elected to contest her guilt at a hearing, which is of course, her right to do. It is equally clear, however, that it is appropriate for a prosecutor to seek a more severe sanction from an accused who chooses not to accept a 'plea bargain.' Indeed, all three students who were charged were told that if they elected not to accept the proposed summary disposition, there were no guarantees that more serious sanctions would [not] be sought in a hearing.

"It is quite clear that remorse is a well established factor in sentencing. The other two students accused of plagiarism in Professor Daniel's class both exhibited remorse and showed an understanding of the nature and seriousness of their actions. Ms. Yu has yet to show any remorse, nor has she shown any comprehension of the seriousness of the charges brought against her. She did attach to her appeal letter a series of letters and emails from various individuals . . . attesting to her moral character. These letters and emails address her work ethic and moral character generally, and more specifically her accomplishments when she was President of the Sports & Entertainment Law Society, a student organization. However, they do not address the charges brought against Ms. Yu.

"Ms. Yu was found to have copied multiple provisions (some several paragraphs long) from an online form contract and from another student's contract. So her violation of plagiarism rules and course rules was not minor or an incidental portion of an otherwise compliant assignment. Ms. Yu's use of unauthorized materials in her assignment is not unlike a student using unauthorized materials in a final exam. Last year a student was caught hiding a course outline in a restroom so that he could access it surreptitiously during the final exam. The sanction sought was expulsion from law school. The student voluntarily withdrew to avoid being expelled from school. Both that student's conduct and Ms. Yu's conduct represent blatant examples of academic dishonesty. A sanction more serious than a failing grade in the course is clearly justified. As noted above, the sanction imposed, in addition to a grade of 0.0 for the course, will be suspension for the remainder of the

current academic year (through summer 2011) and the insertion in Ms. Yu's file of a formal letter of censure."

### 4. *Proceedings in the Superior Court*

On October 21, 2010, Yu filed a complaint in the superior court against the University. The complaint set forth a single cause of action for violation of section 94367.

On November 22, 2010, Yu filed a motion for a preliminary injunction. In this motion Yu requested a preliminary injunction enjoining the University from enforcing the Dean's October 5, 2010, decision.

On December 17, 2010, the trial court denied Yu's motion. The court found that there was insufficient evidence to conclude that Yu was likely to prevail on the merits of her cause of action. Yu timely appealed this order.[2]

### ISSUES

The overarching issue on appeal is whether the trial court abused its discretion in denying Yu's motion for a preliminary injunction. In order to determine that issue we must decide two issues of law. The first is whether section 94367 protects the right to petition the government for redress of grievances. The second is whether Yu's appeal to the Dean was the kind of "speech" protected by section 94367. We must also decide whether there is substantial evidence to support the trial court's implied finding that Yu's exercise of her free speech rights was not the sole basis for the University's decision to increase her sanctions.

### DISCUSSION

### 1. *Standard of Review*

■ The trial court is required to review two interrelated factors when deciding whether to issue a preliminary injunction. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109 [60 Cal.Rptr.2d 277, 929 P.2d 596] (*Gallo*).) " ' "The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued." ' " (*Ibid.*)

---

[2] An order denying a motion for a preliminary injunction is appealable. (Code Civ. Proc., § 904.1, subd. (a)(6); *Right Site Coalition v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 336, 338, fn. 1 [72 Cal.Rptr.3d 678].)

We generally review a trial court's order denying a motion for preliminary injunction for abuse of discretion. (*Sahlolbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1145 [5 Cal.Rptr.3d 598].) Such an order should be affirmed if the trial court correctly found the moving party failed to satisfy *either* of the factors. (*Ibid.*)

" 'Where the evidence before the trial court was in conflict, we do not reweigh it or determine the credibility of witnesses on appeal. "[T]he trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts." [Citation.] Our task is to ensure that the trial court's factual determinations, whether express or implied, are supported by substantial evidence. [Citation.] Thus, we interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order. [Citations.]' " (*People ex rel. Reisig v. Acuna* (2010) 182 Cal.App.4th 866, 878–879 [106 Cal.Rptr.3d 560].)

Yu argues that we should review the trial court's order denying her motion for a preliminary injunction de novo because the issue on appeal "implicates" First Amendment rights. (See *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 889 [4 Cal.Rptr.3d 69, 75 P.3d 1].) We disagree. As we shall explain *post*, Yu is asserting a statutory cause of action, not a claim that her constitutional rights were violated.

The University argues that Yu's claim on the merits depends on questions of law, namely whether section 94367 protects the right to petition government for redress of grievances and whether Yu's appeal to the Dean was the kind of "speech" protected by section 94367. We review questions of law de novo. (*Vo v. City of Garden Grove* (2004) 115 Cal.App.4th 425, 433 [9 Cal.Rptr.3d 257].)

It is Yu's burden to show that the trial court committed reversible error. " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193] (*Denham*).)

### 2. *Yu Did Not Meet Her Burden of Showing a Likelihood of Success on the Merits*

Section 94367, subdivision (a) provides: "No private postsecondary educational institution shall make or enforce a rule subjecting a student to

disciplinary sanctions solely on the basis of conduct that is speech or other communication that, when engaged in outside the campus or facility of a private postsecondary institution, is protected from governmental restriction by the First Amendment to the United States Constitution or Section 2 of Article I of the California Constitution."

Yu contends that the University violated section 94367, subdivision (a) by increasing her sanctions solely on the basis of her exercise of free speech and petition rights. Before we directly address the merits of Yu's claim, we shall discuss the legal parameters of section 94367.

### a. General Principles of Statutory Interpretation

■ " 'In construing any statute, "[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citation.] "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]' [Citation.]

" 'If, however, the statutory language is ambiguous or reasonably susceptible to more than one interpretation, we will "examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes," and we can " ' "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " [Citation.]' [Citation.]

" ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.] Further, 'We presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules. [Citation.]' " (*Doe v. Brown* (2009) 177 Cal.App.4th 408, 417–418 [99 Cal.Rptr.3d 209].)

### b. Section 94367 Protects Liberty of Speech but Does Not Protect the Right to Petition the Government for Redress of Grievances

■ "The Leonard Law, Education Code section 94367 et seq., prohibits private universities from disciplining students for *speech* that would be

protected by the First Amendment [and article I, section 2 of the California Constitution] if made off campus." (*Antebi v. Occidental College* (2006) 141 Cal.App.4th 1542, 1546–1547 [47 Cal.Rptr.3d 277], italics added.) Yu contends that section 94367 not only applies to free speech rights, it also applies to the right to petition the government for redress of grievances. We disagree.

■ The First Amendment contains a number of distinct rights, including freedom of speech and the right to petition. (U.S. Const., 1st Amend.) "The petition clause is analytically distinct from, although related to, the free speech clause . . . ." (*Gable v. Lewis* (6th Cir. 2000) 201 F.3d 769, 771; accord, *Foraker v. Chaffinch* (3d Cir. 2007) 501 F.3d 231, 236.) The various rights protected by the First Amendment are also protected by the California Constitution. (Cal. Const., art. I, §§ 2–4.) These distinct rights are set forth in different sections of the state Constitution. Article I, section 2 protects, inter alia, liberty of speech. (Cal. Const., art. I, § 2.) Article I, section 3 protects, inter alia, the right to petition government for redress of grievances. (Cal. Const., art. I, § 3.)

It is clear from the plain language of section 94367 that the statute applies to freedom of speech, and not to the right to petition. Although section 94367 expressly refers to "speech or other communication," it says nothing about the right to petition. Further, the statute refers to article I, section 2 of the California Constitution, which protects liberty of speech, but does not refer to article I, section 3 of the California Constitution, which protects the right to petition.

In addition, as part of the law which enacted section 94367, the Legislature made findings and declarations regarding free speech in an uncodified statute.[3] (Stats. 1992, ch. 1363, § 4, pp. 6846–6847.)[4] In section 4 of that uncodified statute, the Legislature also stated: "It is the intent of the Legislature that a student shall have the same right to exercise his or right to free speech on campus as he or she enjoyed when off campus." (Stats. 1992, ch. 1363, § 4, pp. 6846–6847.) The Legislature, however, made no findings, declarations or statements about its intent relating to the right to petition.

[3] For example, the uncodified statute stated: "Free speech rights, both on and off campus, are subject to reasonable time, place, and manner regulations." (Stats. 1992, ch. 1363, § 4, p. 6846.)

[4] Section 94367 was enacted as part of a law with four sections. (Stats. 1992, ch. 1363, §§ 1–4, pp. 6844–6847.) Sections 1, 2, and 3 enacted Education Code sections 48950, 66301, and 94367, respectively. Education Code sections 48950 and 66301 contain substantially the same language as section 94367, except that they pertain to high schools and public universities. Section 4 of chapter 1363, which is uncodified, contains findings and declarations, and a statement regarding the Legislature's intent.

In light of the express language of section 94367 and the Legislature's findings, declarations and statement of intent, we hold that section 94367 does not apply to the right to petition the government for redress of grievances.

### c. *Section 94367 Creates Statutory Free Speech Rights*

■ A person's free speech rights under the federal and state Constitutions are not infringed unless there is state action. (*Lloyd Corp. v. Tanner* (1972) 407 U.S. 551, 567 [33 L.Ed.2d 131, 92 S.Ct. 2219] ["it must be remembered that the First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on *state* action . . ."]; *Golden Gateway Center v. Golden Gateway Tenants Assn.* (2001) 26 Cal.4th 1013, 1023 [111 Cal.Rptr.2d 336, 29 P.3d 797] ["California's free speech clause contains a state action limitation."].) Accordingly, a private school is not subject to constitutional scrutiny for infringing free speech rights unless the school's action "can fairly be seen as state action." (*Rendell-Baker v. Kohn* (1982) 457 U.S. 830, 838 [73 L.Ed.2d 41, 102 S.Ct. 27648]; accord, *Caviness v. Horizon Community Learning Center* (9th Cir. 2010) 590 F.3d 806, 814–816.)

We presume that the Legislature, when enacting section 94367, was aware of the state action limitation on free speech rights. The legislative history of section 94367 supports this presumption. The statute was enacted pursuant to Senate Bill No. 1115 (Senate Bill 1115). (Sen. Bill No. 1115 (1991–1992 Reg. Sess.) § 3.) A committee report written by the author of Senate Bill 1115, Senator Bill Leonard, stated: "The First Amendment restricts government actions[,] not the actions of private institutions. Private institutions are affected only if there is significant state involvement (state action). [¶] This bill would extend full First Amendment rights to private high schools and colleges."[5] (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1115 (1991–1992 Reg. Sess.) Apr. 30, 1991, p. 4.)

■ Section 94367 cannot, of course, actually create or expand *constitutional* rights (see Cal. Const., art. XVIII, §§ 1–4), nor does it require a plaintiff to show that his or her constitutional rights were violated in order to prevail. Rather, it creates *statutory* free speech rights for students of private postsecondary educational institutions.

---

[5] The report extensively discussed free speech rights but did not state anything about the right to petition. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1115 (1991–1992 Reg. Sess.) Apr. 30, 1991, pp. 1–5.)

### d. *Yu's Appeal to the Dean Was "Speech" Protected by Section 94367*

The University contends that Yu's appeal to the Dean was not "speech" protected by section 94367. It argues: "Yu's Complaint and her claims before the trial court do not include any allegation that her appeal was a form of speech or other communication that she could have engaged in outside the campus of the University. [¶] Rather, Yu's claim is expressly restricted to only her appeal of the Judicial Board decision to the Dean—a procedure entirely encapsulated within the campus of the University. The Judicial Board, the MAPP and, indeed, the Office of the Dean, do not exist 'outside the campus' of the University. Consequently, because she could not appeal to the Dean 'outside the campus,' the form of speech claimed by Yu to be protected by Section 94367, her appeal, is, by the plain terms of this statute, excluded from protection."

We reject this argument. The purpose of section 94367 is to prohibit private universities from punishing students solely for engaging in speech. That purpose would not be promoted by interpreting the statute to exclude speech directed at a school official regarding a school-related issue. If we were to adopt the University's position, then any communication regarding a school issue directed to a person at the University, including letters and e-mails to professors and school newspapers, would consist of on-campus speech that could not have been engaged in off campus, and thus would fall outside the scope of section 94367.[6] We decline to interpret section 94367 so narrowly.

▓ A letter to the Dean, including a letter which constitutes an appeal from a Judicial Board decision, is the kind of speech covered by section 94367. The only remaining issue is whether the University increased the sanctions against Yu solely because she engaged in such speech.

### e. *There Is Substantial Evidence Supporting the Trial Court's Implied Finding That the University Did Not Increase Yu's Punishment Solely on the Basis of Yu's Exercise of Her Free Speech Rights*

The trial court did not make any express findings regarding the basis of the Dean's decision to increase Yu's sanctions. The court, however, stated that there was "insufficient evidence to conclude the likelihood of [Yu] prevailing."

---

[6] We agree with Yu that her appeal to the Dean was made on campus, even though it consisted of a letter by her attorney sent from his off-campus law office.

Where, as here, the record is silent, we must make all presumptions in favor of the order appealed from. (*Denham, supra,* 2 Cal.3d at p. 564.) We thus presume the trial court found that Yu's exercise of her free speech rights was not the sole basis for the University's decision to increase her sanctions. There is substantial evidence in the record to support this implied finding.

■ The Dean stated a number of reasons for increasing Yu's sanctions that have nothing to do with Yu's exercise of her free speech rights. He noted that Yu did not merely plagiarize a minor or incidental portion of her assignment. Rather, Yu copied multiple and lengthy provisions from an online form contract and from another student's contract. The Dean also assessed Yu's culpability by comparing her conduct to that of a student caught cheating on an exam.

Yu contends that by referring to her lack of "remorse," the Dean indicated he was punishing her for having the temerity to continue disputing the charges. But the Dean's statements regarding Yu's lack of remorse were in a separate paragraph from his statements regarding Yu's decision to continue fighting the charges. Further, the Dean noted that Yu had not shown "any comprehension of the seriousness of the charges brought against her." The trial court thus could have reasonably inferred that Yu's lack of remorse was one of the factors the Dean considered in assessing Yu's punishment, and that this factor was not necessarily solely related to Yu's decision to file an appeal.

As to Yu's decision to appeal the Judicial Board's ruling, the Dean expressly acknowledged that Yu was acting within her rights. The Dean also stated he had the authority under the MAPP to increase Yu's punishment, and that in his view, a more serious sanction was justified. The mere fact that the Dean exercised his prerogative to increase Yu's sanctions does not by itself show that he was punishing her solely for exercising her right to appeal.

Finally, the Dean's statements about Yu's decision to decline a plea bargain do not support Yu's position. The Dean merely stated that "it is appropriate for a *prosecutor to seek* a more severe sanction from an accused who chooses not to accept a 'plea bargain.'" (Italics added.) Nowhere in the Dean's letter does he state that he increased Yu's punishment solely, or in part, because she declined to accept the plea bargain offered by the special prosecutor.

For all of these reasons, we conclude there is substantial evidence supporting the trial court's implied finding that the University did not increase Yu's punishment solely on the basis of her exercise of free speech rights. Based on this finding, the trial court correctly determined that Yu did not meet her burden of showing it was likely she would prevail on the merits of her section

94367 claim. Accordingly, the trial court did not abuse its discretion in denying Yu's motion for a preliminary injunction.

### 3. *We Do Not Reach the Issue of Whether the Balance of Harms Favors Granting a Preliminary Injunction*

As stated *ante*, the second factor the trial court must consider in determining whether to grant a motion for a preliminary injunction is " ' "the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued." ' " (*Gallo, supra*, 14 Cal.4th at p. 1109.) The trial court did not consider the second factor because it determined that Yu did not show she was likely to prevail on the merits. Because we agree with the trial court with respect to the merits, we come to the same stopping point. We do not reach the issue of whether the balance of harms favors granting a preliminary injunction.

## DISPOSITION

The order denying Yu's motion for preliminary injunction is affirmed. The University is awarded costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 14, 2011, S195182.