Filed 6/11/13  SB Liberty v. Isla Verde Assn. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| SB LIBERTY, LLC, | D061261 |
| Plaintiff and Appellant, | (Super. Ct. No. 37-2011-00059253-CU-MC-NC) |
| v. | |
| ISLA VERDE ASSOCIATION, INC., | ORDER DENYING REHEARING AND MODIFYING OPINION |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 22, 2013, be modified as follows:

1.  On page 8, first sentence of the last paragraph beginning with "On December 28, 2011," the words "the Association's" in the phrase "the Association's motion for preliminary injunction" are changed to "SB Liberty's" so the sentence reads:

On December 28, 2011, the court issued its order denying SB Liberty's motion for preliminary injunction.

2.  On page 18, at the end of footnote 11, add the following sentence:

It is undisputed that attorney Lepiscopo was *not* a member or manager of SB Liberty.

3.  In the caption on page 1, the designation of SB Liberty, LLC as "Plaintiff and Respondent" is changed to "Plaintiff and Appellant," and the designation of Isla Verde Association, Inc. as "Defendant and Appellant" is changed to "Defendant and Respondent."

4.  The counsel listing on page 1 is deleted and replaced with the following listing:

       Lepiscopo & Associates Law Firm and Peter D. Lepiscopo for Plaintiff and Appellant.

       Epsten Grinnell & Howell, William S. Budd; Gates, O'Doherty, Gonter & Guy, Thomas A. Scutti and Douglas D. Guy for Defendant and Respondent.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

NARES, Acting P. J.

Copies to:  All parties

Filed 5/22/13  SB Liberty v. Isla Verde Assn. CA4/1 (unmodified version)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SB LIBERTY, LLC, | D061261 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2011-00059253-CU-MC-NC) |
| ISLA VERDE ASSOCIATION, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Frederick A. Mandabach, Judge.  (Retired judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.)  Affirmed.

Epsten Grinnell & Howell, William S. Budd and Thomas A. Scutti; Gates, O'Doherty, Gonter & Guy and Douglas D. Guy for Defendant and Appellant.

Lepiscopo & Associates Law Firm and Peter D. Lepiscopo for Plaintiff and Respondent.

INTRODUCTION

In 2006 Gregg and Janet Short (together the Shorts, who are not parties to this appeal but are interested persons) purchased a home in the Isla Verde residential community (Isla Verde). They then transferred title to themselves as trustees of their family trust and later transferred title to plaintiff SB Liberty, LLC (SB Liberty), a California limited liability company organized in early 2011, which is owned by the Shorts as trustees of their trust and is managed by Gregg Short, SB Liberty's sole manager. The Shorts reside in the home. Defendant Isla Verde Association, Inc. (the Association) is a California nonprofit mutual benefit corporation that is an association of the Isla Verde homeowners. It is undisputed that SB Liberty is a member of the Association.

This action against the Association for injunctive relief (among other things) arose when the Association's board of directors (the Board) denied SB Liberty's retained counsel, Peter D. Lepiscopo, access to the Board's September and October 2011 meetings. SB Liberty brought a motion for preliminary injunction seeking to enjoin the Association and the Board from taking any action to prevent or interfere with SB Liberty's representatives, including Lepiscopo, attending and participating in the Board's meetings. The court denied the motion.

SB Liberty appeals the denial of its motion for preliminary injunction, contending (1) the Association—a "quasi-government entity"—has prevented SB Liberty—whose association, speech, and member rights are fundamental in nature—from attending the open sessions of the Association's Board meetings by excluding its chosen

representative—attorney Lepiscopo[1]—from those meetings, thereby causing SB Liberty to suffer great and irreparable harm; and (2) SB Liberty is entitled to send the representative of its own choosing (Lepiscopo) to the open sessions of the Board's meetings because SB Liberty is a member of the Association but not a natural person. We affirm the order denying SB Liberty's motion for preliminary injunction.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

Isla Verde is a residential community consisting of 87 single-family properties located in the Lomas Santa Fe area of Solana Beach. The Association is a nonprofit mutual benefit corporation established to conduct the business of Isla Verde's member homeowners. The Association conducts its business pursuant to various governing documents, including the articles of incorporation (Articles), protective covenants and restrictions (PC&Rs) and bylaws (Bylaws).

The Association operates through its board of directors (Board), which consists of seven Association "members," which the Bylaws define as "[e]very beneficial owner (as defined by California Code, and as distinguished from a security owner) of real property situated in . . . Isla Verde."

The Bylaws contain rules governing the meetings of members and the Board. Article XV, section 15.14, of the Bylaws provides that "[a]ny *member* in good standing

---

[1]    Lepiscopo represented SB Liberty during the trial court proceedings in this matter and also represents SB Liberty on appeal.

may attend any [Board] meeting, except those portions of such meetings which are declared as 'Executive Session' meetings."  (Italics added.)

After the Shorts transferred title of their home to themselves as trustees of their family trust in mid-2006, they submitted architectural plans to remodel the their house, which eventually led to a dispute between the Shorts and the Association regarding the scope of the construction the Shorts were permitted to perform, eventually resulting in litigation brought by the Association.

SB Liberty's articles of organization were filed in early 2011, establishing it as a limited liability company with Gregg Short designated as the sole manager.

Later that year, the Shorts' retained counsel, Lepiscopo, provided notice to the Association's legal counsel, William S. Budd, that he represented the Shorts.  In that notice, Lepiscopo requested various documents and a "detailed summary of the purpose for and status of any proposed amendments to the governing documents."

Thereafter, Lepiscopo advised Budd that he might attend the September 14, 2011 Board meeting on behalf of the Shorts.  Budd advised Lepiscopo that he was not planning to attend the September meeting and asked that Lepiscopo not attend, stating that "the Rules of Professional Conduct prohibit communication with a represented party without permission from that party's attorney."

Lepiscopo replied, indicating his attendance at the upcoming September 14 Board meeting would not implicate the Rules of Professional Conduct because he would be appearing as a representative of his clients, whom he again identified as Gregg and Janet Short.

4

On the day before the Board meeting, Budd reiterated in an e-mail to Lepiscopo that he was not allowed to attend the Board meeting over Budd's objection, as it would violate rule 2-100 of the Rules of Professional Conduct, and also instructed Lepiscopo that he could not communicate with his client without Budd's permission.

Lepiscopo responded with a letter, which he sent to Budd by e-mail and fax, disagreeing with Budd's interpretation of rule 2-100 and stating that he (Budd) and the Board "do not hold a veto over [the Shorts'] right to decide the manner in which they attend any [Association] Board meeting," and reiterating that he (Lepiscopo ) planned to attend the September 2011 board meeting on behalf of the Shorts as their representative.

Lepiscopo attempted to attend the September 2011 Board meeting on behalf of the Shorts, but was denied access to the meeting. Specifically, after he advised the Board that he represented the Shorts, Lepiscopo was asked to leave and was advised that the Shorts could be at the meeting, but not their attorney. When Lepiscopo refused to leave, the meeting was adjourned to a board member's residence.

The next day the Shorts, as trustees of their family trust, recorded a grant deed conveying ownership of their residence to SB Liberty, a California limited liability company.

About a week later the Shorts, as trustees of their trust, and Gregg Short, as the manager of SB Liberty, executed─as principals─a "Specific Power of Attorney" (which they recorded two days later) that purportedly gave Lepiscopo─as their attorney-in-fact or agent─the right to "present requests and motions" to the Board and to "attend and

5

participate" in the Board's meetings on their behalf, "as fully, to all intents and purposes, as [the] Principals might or could do if personally present."

Thereafter, Lepiscopo notified Budd of his intention to attend the Board's October 2011 meeting on behalf of the Shorts. Lepiscopo attached to his letter a copy of the recorded power of attorney.

In a reply letter, Budd stated that the power of attorney "is really nothing more than authorization from the Shorts to act as their attorney"; "[i]t doesn't confer any power on you except to attend meetings and advocate their interests"; and "[i]t doesn't even qualify as a proxy because it expressly withholds the power to vote at membership meetings." Budd also stated:

> "[W]hile [the Power of Attorney] purports to give you the power to make motions, you may not [do so] for two reasons: First, only Board Members can make motions at board meetings. Second, only members can make motions at membership meetings. That power of attorney does not appear to confer any membership rights to you because a membership cannot be parsed out among different people. In other words, one person cannot have voting rights, while another has the right to make motions at membership meetings."

In his letter, Budd advised Lepiscopo that he would forward to the Board Lepiscopo's correspondence and his "request to attend meetings on behalf of the Shorts." Budd informed Lepiscopo of the time and place of the Board's October 2011 meeting and stated that the Board would consider in executive session his request to attend, and it would advise him of their decision before the open session began.

6

At the October 12, 2011 Board meeting, after the Board met in executive session, the Board's chairperson advised Lepiscopo that the Board had met and voted to exclude his attendance at the meeting, asked him to leave, and he did.

B. *Procedural Background*

SB Liberty commenced this action against the Association in late October 2011, by filing a complaint in which it sought injunctive relief, a refund of allegedly unlawful increases in annual dues, specified civil penalties, and declaratory relief. SB Liberty attached to the complaint copies of the Articles, the PC&Rs, and the Bylaws.

1. *SB Liberty's motion for preliminary injunction*

Soon thereafter, SB Liberty filed an ex parte application for an order to show cause hearing re preliminary injunction and for the issuance of a temporary restraining order pending hearing on a preliminary injunction (motion for preliminary injunction), seeking (as pertinent here) a preliminary injunction restraining and enjoining the Association and its Board "from taking any and all action, whether directly or indirectly, to prevent or interfere with SB Liberty's representatives, including its legal counsel, Mr. Lepiscopo," from (1) "presenting written motions or proposals to [the Association] prior to any HOA Board Meeting"; (2) "attending and fully participating in the November 2011 HOA Board Meeting"; and (3) "attending and fully participating in any future HOA Board Meeting."

In support of its motion, SB Liberty asserted the Association is a quasi-governmental entity and, as SB Liberty's "association and member rights are fundamental in nature," its loss of such rights constituted irreparable harm. SB Liberty also asserted

7

the Association's governing documents and various sections of the Civil Code and Corporations Code "support SB Liberty's position that Mr. Lepiscopo was authorized to attend the September and October 2011 [Association] Board meetings."

In its opposition to the motion, the Association argued "[t]here is no legal basis for allowing a member's legal counsel to appear before the Board without his client present, and without [the Association's] counsel at the Board meeting." The Association also asserted that Lepiscopo's direct contact with the Board without the Association's permission would be a violation of rule 2-100 of the Rules of Professional Conduct; "[t]he only persons allowed to attend a meeting are members"; Lepiscopo was "neither an officer nor [a] member of [SB Liberty]"; and SB Liberty's power of attorney did not grant Lepiscopo "rights of membership or ownership in SB Liberty's real property."

Following a hearing on the motion and submission of supplemental briefing by the parties, the court took the matter under submission.

a. *Ruling*

On December 28, 2011, the court issued its order denying the Association's motion for preliminary injunction. Regarding the issue of whether SB Liberty had met its burden of showing a reasonable probability of prevailing on the merits, the court first noted that the parties could not "point to a particular section, or sections, of the law" or any treatises pertaining to the issue of whether SB Liberty, as a member of the Association, could "designat[e] a representative to attend, and participate in, [Association] meetings." The court stated it "was left to conclude that the issue . . . must be decided on general

8

principles of law relating to [common interest developments], corporations, [limited liability companies (LLC's),] and agency."

The court found it was undisputed that SB Liberty became a member of the Association when the Shorts transferred ownership of their lot to SB Liberty. Citing sections 17150 and 17151 of the Corporations Code, the court explained that "[m]anagement of an LLC is vested in all members [of the LLC] unless the articles of organization provide otherwise," and an LLC can be managed by one or more managers who need not be members of the LLC. The court also found it was undisputed that SB Liberty's counsel, Lepiscopo, was not a member of SB Liberty.

The court rejected SB Liberty's claim that the decision to exclude Lepiscopo from Association meetings as SB Liberty's designated representative was an abridgement of its First Amendment freedom. Noting that SB Liberty was "free to appear through its manager [(Gregg Scott)] and its members" and finding that Lepiscopo was neither a manager nor a member of SB Liberty, the court concluded that "SB Liberty's freedom has not been abridged by an act of the [Association]."

Noting that SB Liberty's complaint described the Association as a nonprofit mutual benefit corporation, the court found the Board had the authority under Corporations Code section 7210 to determine how to conduct its meetings and to exclude nonmembers from its meetings. Citing Corporations Code section 7320 and noting that "[t]he parties fail[ed] to point to a provision of the [Articles] or [Bylaws] which authorizes a member to transfer membership or any right arising from membership except

9

the right to vote by proxy,"[2] the court found SB Liberty "is not allowed to transfer its membership rights to [Lepiscopo]." The court concluded that SB Liberty "ha[d] failed to show a reasonable probability of prevailing on this issue at trial."

## DISCUSSION

In support of its claim that the court erroneously denied its motion for preliminary injunction, SB Liberty contends that (1) the Association is a "quasi-government entity" and SB Liberty's association, speech, and member rights are fundamental in nature; (2) it is entitled to send the representative of its own choosing—attorney Lepiscopo—to the open sessions of the Board's meetings because SB Liberty is a member of the Association but not a natural person; and (3) by preventing Lepiscopo from attending and participating in those meetings on behalf of SB Liberty as its representative, the Association has caused it to suffer a loss of its fundamental rights, which constitutes great and irreparable harm. These contentions are unavailing.

A. *Applicable Legal Principles*

The general purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits of the action. (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528.) "'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial

---

2    The court found that "[t]he agency agreement signed by [the Shorts] does not give Lepiscopo the right to vote."

10

on the merits, the defendant should or . . . should not be restrained from exercising the right claimed by him.'" (*Ibid.*)

A trial court must weigh two interrelated factors when deciding whether to grant a plaintiff's motion for a preliminary injunction: (1) the likelihood that the plaintiff will prevail on the merits at trial; and (2) the relative interim harm to the parties from the issuance or nonissuance of the injunction; that is, the interim harm the plaintiff is likely to sustain if the injunction is denied as compared to the harm the defendant is likely to suffer if the preliminary injunction is issued. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109; *Butt v. State of California* (1992) 4 Cal.4th 668, 677-678.)

Thus, "[t]he trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction." (*Butt v. State of California*, *supra*, 4 Cal.4th at p. 678.) "A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Ibid.*) Accordingly, the trial court must deny a motion for a preliminary injunction if there is no reasonable likelihood the moving party will prevail on the merits. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 447; see *Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 786-787 [order denying a motion for preliminary injunction should be affirmed if the trial court correctly found the moving party failed to satisfy either of the two factors].)

Appellate review of a trial court's order granting or denying a motion for preliminary injunction generally is "limited to whether the trial court's decision was an

abuse of discretion." (*Butt v. State of California*, *supra*, 4 Cal.4th at p. 678; *Yu v. University of La Verne*, *supra*, 196 Cal.App.4th at pp. 786-787.) "A trial court will be found to have abused its discretion only when it has '"exceeded the bounds of reason or contravened the uncontradicted evidence."'" (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.) The burden rests with the party challenging a trial court's decision to grant or deny a preliminary injunction to make a clear showing of an abuse of discretion. (*Ibid.*)

However, as this court explained in *California Assn. of Dispensing Opticians v. Pearle Vision Center, Inc.* (1983) 143 Cal.App.3d 419, 426, "when the matter is solely a question of a violation of law the standard of review is not abuse of discretion but whether statutory or constitutional law was correctly interpreted and applied by the trial court."

B. *Analysis*

In denying SB Liberty's motion for a preliminary injunction, the court found that the Board may exclude from the open sessions of its meetings a person like Lepiscopo who is not a member of the Association and determined that SB Liberty failed to meet its burden of showing a reasonable probability of prevailing on the merits at trial. The court did not err.

We first conclude that SB Liberty's claim it is entitled to send the representative of its own choosing─here, Lepiscopo─to participate in the open sessions of the Board's meetings on SB Liberty's behalf, is unavailing. SB Liberty relies in part on Civil Code section 1363.05, which is known as the Common Interest Development Open Meeting

12

Act and is part of the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.).[3] (See Civ. Code, §§ 1350 & 1363.05, subd. (a).) With exceptions not pertinent here, subdivision (b) of Civil Code section 1363.05 provides that "[a]ny *member* of the association[4] may attend meetings of the board of directors of the association . . . ." (Italics added.) Subdivision (h) of that section provides that "[t]he board of directors of the association shall permit any *member* of the association to speak at any meeting of the association or the board of directors, except for meetings of the board held in executive session." (Italics added.)

The Association's governing documents define who qualifies as a member of the Association and address both the rights of members and their participation at Board meetings. Article I, paragraph 7, of the PC&Rs defines "Member" as "an Owner, as defined below, who is entitled to membership in the Association as provided in this declaration." That paragraph also provides that "[o]wnership of a Lot shall be the sole qualification for membership in the Association." Article I, paragraph 8, of the PC&Rs defines "Owner" as "the Record owner or owners, whether one or more persons or entities, of fee simple title to any Lot, but excluding those having such interest merely as security for the performance of an obligation."

---

3     "'Common interest development' means any of the following:  [¶] (1) A community apartment project.  [¶] (2) A condominium project.  [¶] (3) A planned development.  [¶] (4) A stock cooperative."  (Civ. Code, § 1351, subd. (c).)

4     "'Association' means a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development."  (Civ. Code, § 1351, subd. (a).)

13

Similarly, article III of the PC&Rs states that "[t]he owner of a lot shall automatically, upon becoming an owner of same, be a member of the Association" and provides that a member "shall remain a member thereof until such time as his ownership ceases for any reason." That article also provides that "[n]o member shall resign his membership," and "[m]embership in the Association shall not be transferred, encumbered, or alienated in any way, except upon the sale or encumbrance of the lot to which it is appurtenant."

Regarding the qualifications and rights of members, article III, paragraph 3.1, of the Bylaws provides that "[t]hose members whose annual dues and assessments (if any) are current shall be considered 'Members in Good Standing'" and that such members "have all rights inherent with that membership, including, but not limited to the right to vote on all measures submitted to the membership at any meeting or mail ballot," as well as "the right to serve on any committee" and "the right to serve as directors and/or officers."

Paragraph 15.14 of article XV of the Bylaws, which is titled "Participation of members other than directors at meetings of the [Board]," provides that "[a]ny member in good standing" may attend the open sessions of the Board's meetings and delineates the scope of their participation at such meetings:

> "*Any member in good standing* may attend any [Board] meeting, except those portions of such meetings which are declared as 'Executive Session' meetings. Once an agenda item has been declared open for discussion they may ask to be recognized for the purposes of addressing the meeting in relation to that agenda item. [¶] *Members* may submit written proposals to the Secretary proposing matters for discussion and/or resolution. . . . [¶] The

14

> Board shall consider *members'* proposals and consider and
> decide . . . the issues raised."  (Italics added.)

Here, the court found, and the Association does not dispute, that SB Liberty became a member of the Association when the Shorts transferred ownership of their lot to it.

However, it does not follow (as SB Liberty contends) that, by virtue of its status as a member of the Association, SB Liberty is entitled to send Lepiscopo to attend and participate in the open sessions of the Board's meetings on SB Liberty's behalf as its representative.  SB Liberty is a California limited liability company.  Under the Beverly-Killea Limited Liability Company Act (Corp. Code, § 17000 et seq.) (the Act), management of the business and affairs of a limited liability company[5] is vested in its members[6] unless the articles of organization provide otherwise.  (Corp. Code, § 17150.)[7]

---

[5]     The Act defines "limited liability company" as "an entity having one or more members that is organized under this title and is subject to the provisions of [Corporations Code] Section 17101."  (Corp. Code, § 17001, subd. (t).)

[6]     The Act defines "member" as "a person who:  [¶] (1) Has been admitted to a limited liability company as a member in accordance with the articles of organization or operating agreement, or an assignee of an interest in a limited liability company who has become a member pursuant to [Corporations Code] Section 17303.  [¶] (2) Has not resigned, withdrawn, or been expelled as a member or, if other than an individual, been dissolved."  (Corp. Code, § 17001, subd. (x).)

[7]     Corporations Code section 17150 provides:  "Unless the articles of organization include the statement referred to in subdivision (b) of [Corporations Code] Section 17151 vesting management of the limited liability company in a manager or managers, *the business and affairs of a limited liability company shall be managed by the members* subject to any provisions of the articles of organization or operating agreement restricting or enlarging the management rights and duties of any member or class of members.  If management is vested in the members, each of the members shall have the same rights

15

Under the Act, the articles of organization of a limited liability company "may provide that the business and affairs of the limited liability company shall be managed by or under the authority of one or more managers who may, but need not, be members." (*Id.*, § 17151, subd. (a).)

Thus, under the Act, the business and affairs of SB Liberty must be managed by the members of SB Liberty or, if authorized by its articles of organization, by Greg Short, who is the sole manager of SB Liberty. (Corp. Code, §§ 17150, 17151, subd. (a).)

Here, it is undisputed, as the court properly found, that Lepiscopo is not a member of SB Liberty. The record also shows he is not a manager of SB Liberty authorized by its articles of organization to manage its business and affairs. Thus, Lepiscopo is not authorized to manage the business and affairs of SB Liberty, and SB Liberty's members and/or manager cannot delegate such management authority to him.

Furthermore, article III of the Association's PC&Rs and applicable statutory authority prohibit SB Liberty from transferring to Lepiscopo any right arising from SB Liberty's Association membership—except the right to vote by proxy (see Corp. Code, § 7613)[8]—such as the right accorded to Association members under Article XV,

_____

and be subject to all duties and obligations of managers as set forth in this title." (Italics added.)

[8]   SB Liberty's complaint alleges, and the Association's PC&Rs indicate, that the Association is a California nonprofit mutual benefit corporation. Corporations Code section 7613, subdivision (a), which is part of the Nonprofit Mutual Benefit Corporation Law (Corp. Code, § 7110 et seq.), provides (subject to restrictions not pertinent here) that "[a]ny member may authorize another person or persons to act by proxy with respect to such membership except that this right may be limited or withdrawn by the articles or

16

paragraph 15.14, of the Bylaws to attend and participate in the open sessions of the Board's meetings.[9] As the court properly found, the specific power of attorney executed by the Shorts (discussed, *ante*) did not expressly give Lepiscopo the right to vote on behalf of SB Liberty.

In addition, as the court also properly found, the Board had the authority to determine how to conduct its meetings and, thus, the power to prevent a nonmember (Lepiscopo) from attending and participating in those meetings on behalf of SB Liberty as its representative. (Corp. Code, § 7210;[10] see *Burt v. Irvine Co.* (1964) 224 Cal.App.2d 50, 51.)

---

bylaws." Article XII, section 12.3, of the Association's bylaws provides that "[m]embers may vote in person or by written proxy."

[9] As noted, article III of the Association's PC&Rs provides "[m]embership in the Association shall not be transferred, encumbered, or alienated in any way, except upon the sale or encumbrance of the lot to which it is appurtenant." Corporations Code section 7320, subdivision (a)(1) of the Nonprofit Mutual Benefit Corporation Law (see fn. 8, *ante*) provides: "Subject to [Corporations Code] Section 7613: [¶] (a) Unless the articles or bylaws otherwise provide: [¶] (1) No member may transfer a membership *or any right arising therefrom*." (Italics added.)

[10] Corporations Code section 7210 of the Nonprofit Mutual Benefit Corporation Law (see fn. 8, *ante*) provides: "Each corporation shall have a board of directors. Subject to the provisions of this part and any limitations in the articles or bylaws relating to action required to be approved by the members ([Corporations Code] Section 5034), or by a majority of all members ([Corporations Code] Section 5033), the activities and affairs of a corporation shall be conducted and all corporate powers shall be exercised by or under the direction of the board

17

Also unavailing is SB Liberty's claim that by preventing Lepiscopo from attending and participating in the open sessions of the Board's meetings on behalf of SB Liberty, as its representative, the Association has caused SB Liberty to suffer great and irreparable harm.  The record shows, as the court properly found, that SB Liberty at all times was free to attend and participate in those meetings through its members or (if permitted by its articles of organization) its manager, Gregg Short.  SB Liberty has failed to meet its burden of showing the exclusion of Lepiscopo from those meetings as its representative was an abridgment of its First Amendment or membership rights.[11]

For all of the foregoing reasons, we affirm the court's order denying SB Liberty's motion for a preliminary injunction.

---

[11]    We express no opinion regarding the issue─which is not presented here─of whether an attorney appointed by an LLC member of the Association as the LLC's manager would have the right to appear at the open sessions of the Board's meetings on behalf of the LLC as its representative.

18

DISPOSITION

The order denying SB Liberty's motion for preliminary injunction is affirmed.

The Association shall recover its costs on appeal.


NARES, Acting P. J.

WE CONCUR:


McINTYRE, J.


AARON, J.

19