Filed 12/12/13  Kahan v. Carrizo Gorge Railway CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KEN KAHAN, | D062526 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00095975-CU-BT-CTL) |
| CARRIZO GORGE RAILWAY, INC., | |
| Defendant and Respondent. | |


APPEAL from an order of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.


Law Offices of Michael A. Gardiner and Michael A. Gardiner for Plaintiff and Appellant.

Turner & Maasch and Mark A. Maasch for Defendant and Respondent.

## INTRODUCTION

Shareholder Ken Kahan appeals from an order denying his application for a preliminary injunction to enjoin a corporation from implementing a settlement agreement and from counting votes attributable to a stock issuance without prior approval of the outstanding shares. He contends the court erred in denying his application because he demonstrated both that the balance of harms favored granting the injunction and that he had a probability of succeeding on the merits of his claims. We conclude Kahan did not demonstrate a probability of succeeding on the merits of his claims and affirm the trial court's order.

## BACKGROUND[1]

Kahan is a shareholder in Carrizo Gorge Railway, Inc. (Railway). In 2002 Railway obtained the rights to operate over the "Desert Line," a stretch of approximately 70 miles of railroad tracks extending alongside the United States-Mexico border from Division to Plaster City. The Desert Line had not been in use "due to a series of washouts, tunnel collapses and maintenance issues." However, Railway intended to "reopen the Desert Line by reconstructing the line to accommodate freight service." The record does not show Railway ever achieved this objective.

On January 5, 2011, Railway entered into an assignment, assumption, and settlement agreement (settlement agreement) with Pacific Imperial Holdings, LLC

---

[1] Although this case has a colorful history, we relate only the facts necessary to resolve this appeal.

2

(Pacific Holdings), Pacific Imperial Industries, LLC (Pacific Industries) and Sheila LeMire. The stated purpose of the settlement agreement was to globally resolve existing claims Pacific Holdings had against Railway for defaulted debts secured by Railway's assets as well as potential claims Pacific Industries and LeMire had against Railway for Railway's breaches of an ancillary agreement. Among its provisions, the settlement agreement transferred Railway's right to operate the Desert Line to Pacific Industries.[2] Pacific Holdings, Railway's then majority shareholder, consented to the settlement agreement and Railway's board of directors approved it.[3]

On January 14, 2011, Railway issued a total of 4,825,000 new shares of stock to LeMire and others. Railway's board of directors approved the stock issuance. When Kahan learned of the settlement agreement and the stock issuance, he filed a complaint for declaratory and injunctive relief and sought a preliminary injunction enjoining Railway from implementing the settlement agreement and from counting votes attributable to the stock issuance until Railway's shareholders approved these actions. According to Kahan, these actions were invalid because a 2007 amendment to Railway's bylaws (2007 amendment) precluded Railway's board of directors from issuing capital

---

[2] Pacific Industries has since transferred the Desert Line operating rights to Pacific Imperial Railroad.

[3] In a separate proceeding the same month Railway entered into the settlement agreement, a court determined Pacific Imperial owned 920,000 shares of Railway's stock and controlled another 137,000 shares. At the time, this was approximately 69 percent of Railway's outstanding stock

3

stock or engaging in transactions exceeding $100,000 or a one-year term without the approval of the outstanding shares.[4]

The court denied Kahan's application for a preliminary injunction, finding the balance of harms favored denying the injunction. The court also found Kahan was not likely to prevail on the merits of his claims because the 2007 amendment was ineffective under Corporations Code section 204.[5]

## DISCUSSION

"A trial court must weigh two interrelated factors when deciding whether to grant a plaintiff's motion for a preliminary injunction: (1) the likelihood that the plaintiff will prevail on the merits at trial, and (2) the relative interim harm to the parties from the issuance or nonissuance of the injunction, that is, the interim harm the plaintiff is likely to sustain if the injunction is denied as compared to the harm the defendant is likely to suffer if the preliminary injunction is issued." (*SB Liberty, LLC v. Isla Verde Assn., Inc.* (2013) 217 Cal.App.4th 272, 280.) " 'A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim.' [Citation.]

---

[4] The 2007 amendment provided: "Without the approval of the outstanding shares, the Board of Directors shall not take any of the following actions: [¶] (a) issue any shares of capital stock or other securities convertible into shares of capital stock; [¶] (b) engage in transactions when the amount involved exceeds one hundred thousand dollars ($100,000) or the term of which shall exceed one (1) year."

[5] Further statutory references are also to the Corporations Code.

Accordingly, the trial court must deny a motion for a preliminary injunction if there is no reasonable likelihood the moving party will prevail on the merits. [Citations.]" (*Ibid.*)

We generally review a court's order granting or denying an application for a preliminary injunction for abuse of discretion. (*SB Liberty, LLC v. Isla Verde Assn., Inc.*, *supra*, 217 Cal.App.4th at pp. 280-281.) However, to the extent the court's order depends on its determination of a question of law, we independently review the determination. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408-409.)

In this case, Railway asserts the court properly found Kahan had no reasonable likelihood of prevailing on the merits of his claims because the 2007 amendment upon which they were based was ineffective under section 204, subdivision (a)(9). Under this code section, a provision requiring a corporate action to be approved by the outstanding shares, where such approval is not otherwise required by statute, is not effective unless the provision is expressly included in the articles of incorporation. (§ 204, subd. (a)(9).)[6] As explained in Assembly legislative committee comments made at the time of section 204's enactment, "Certain provisions are of such a nature (e.g., a requirement that specific corporate acts be approved by the vote of all of the shares or directors, as the case may be) that they ought not to be permitted unless stated in the articles. If restricted to the articles, the existence of such significant provisions is more easily determined and their

---

[6]    Section 204, subdivision (a)(9), states: "The articles of incorporation may set forth: [¶] (a) Any or all of the following provisions, which shall not be effective unless expressly provided in the articles: [¶] . . . [¶] (9) A provision requiring . . . the approval of the outstanding shares (Section 152) for any corporate action, even though not otherwise required by this division."

adoption or change is subject to the procedures for amendment of the articles. Accordingly, [section 204] requires certain specifically enumerated provisions to be stated in the articles in order to be effective." (Legis. Com. com., 23E West's Ann. Corp. Code (2013), foll. § 204, p. 84; see also § 212, subd. (b)(1) [authorizing corporate bylaws to contain the provisions enumerated in subdivisions (b), (c), or (d) of section 204, but not the provisions enumerated in subdivision (a)].)

The record does not show and Kahan does not contend Railway's articles of incorporation include the "approval of the outstanding shares" provisions contained in the 2007 amendment. Rather, Kahan contends section 204, subdivision (a)(9), does not apply to this case because section 1001, subdivision (a), already requires approval of the outstanding shares for transfers of all or substantially all of a corporation's assets.[7]

We find Kahan's contention unavailing for two reasons. First, the claims in Kahan's complaint are based solely on Railway's failure to comply with the 2007 amendment. They are not based on Railway's failure to comply with section 1001, subdivision (a), or any other provision of the Corporations Code.[8] Second, the "approval

---

[7]     Section 1001, subdivision (a) provides: "A corporation may sell, lease, convey, exchange, transfer, or otherwise dispose of all or substantially all of its assets when the principal terms are approved by the board, and, unless the transaction is in the usual and regular course of its business, approved by the outstanding shares (Section 152), either before or after approval by the board and before or after the transaction."

[8]     At oral argument, Kahan's counsel insisted Kahan's claims were at least partially based on a violation of section 1001, subdivision (a). However, when we reviewed Kahan's complaint, we did not find any reference to this code section. Although Kahan did reference this code section in some of the other papers he filed below, he did not reference it in the context of asserting a claim for violation of the code section. Rather,

of the outstanding shares" provisions in the 2007 amendment are not limited to transfers of all or substantially all of a corporation's assets. The provisions apply to all stock issuances and to any transaction exceeding $100,000 or a one-year term. Consequently, section 1001, subdivision (a), does not obviate the requirement that the provisions be included in Railway's articles of incorporation to be effective.

As Kahan has not demonstrated the 2007 amendment was effective under section 209, subdivision (a), he has not demonstrated a probability of succeeding on the merits of his claims or that the court erred in denying his application for a preliminary injunction. (*SB Liberty, LLC v. Isla Verde Assn., Inc.*, *supra*, 217 Cal.App.4th at p. 280.) Given our conclusion, we need not address Railway's alternate contention the 2007 amendment was ineffective under section 204, subdivision (a)(8).[9] We also need not decide whether the court correctly found the balance of harms favored denying the injunction or Kahan's related evidentiary objections.

---

as on appeal, he referenced it in the context of countering Railway's assertion the 2007 amendment was ineffectual because its provisions were not included in the articles of incorporation.

[9] Section 204, subdivision (a)(8), states: "The articles of incorporation may set forth: [¶] (a) Any or all of the following provisions, which shall not be effective unless expressly provided in the articles: [¶] . . . [¶] (8) A provision conferring upon shareholders the right to determine the consideration for which shares shall be issued." Kahan contends this section does not apply here because the 2007 amendment did not seek to confer such rights on the shareholders.

## DISPOSITION

The order is affirmed.  Respondent is awarded costs on appeal.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

8