Filed 2/8/21  Kelly v. St. Denis Homeowners Assn. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| PATRICIA WARD KELLY, | B295067 |
| Cross-complainant and Respondent, | (Los Angeles County Super. Ct. No. BC704060) |
| v. | |
| ST. DENIS HOMEOWNERS ASSOCIATION, | |
| Cross-defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed.

Veatch Carlson and Serena L. Nervez for Cross-defendant and Appellant.

Kushner Carlson, PC, James D. Decker and Shelby L. Daws for Cross-complainant and Respondent.

_____

Cross-defendant St. Denis Homeowners Association (HOA) appeals from the trial court's grant of cross-complainant Patricia Kelly's (Kelly) application for a preliminary injunction enjoining the HOA from removing trees next to Kelly's townhouse. The HOA contends the trial court abused its discretion in granting the preliminary injunction because the trial court's findings in the HOA's favor precluded Kelly from showing a likelihood of prevailing on the merits of her claims. The HOA also argues that trial court erred in finding the interim harm to Kelly outweighed the harm to the HOA. We affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Kelly is the owner of a townhouse that is one of 21 residential units within the HOA. This action began in April 2018 when the HOA first sued Kelly alleging causes of action for breach of the covenants, conditions and restrictions (CC&Rs) and nuisance.[1] The specific allegations in the complaint—which sought to enjoin Kelly from, among other things, obstructing the common area and maintaining an unused HVAC on the roof—are not before us.

In June 2018, the HOA Board of Directors (Board) informed the homeowners that the Board had approved a bid for removing all trees and plants from the common area planters in order to waterproof the planters. The stated reason for the project was that water was leaking from the planters into the HOA's subterranean garage. The Board also approved an arborist's recommendations for planting new plants in the planters.

---

[1] Kelly was sued individually and in her capacity as trustee of the Patricia W. Kelly Trust. The trust is not a party to the appeal.

In July 2018, Kelly filed a cross-complaint based on the Board's proposal to remove the trees from planters directly outside of Kelly's unit. The cross-complaint alleged (1) breach of contract based on the Board's incurring expenses for "capital improvements" (removal of the trees) without approval of a majority of the HOA as required by the CC&Rs, (2) nuisance alleging the removal of the trees would interfere with her enjoyment of her property, (3) declaratory relief that the proposed removal of the trees violated the CC&Rs, and (4) violation of the Open Meeting Act based on the Board's taking "action on the" leak repair plan in closed meetings that Kelly was not allowed to attend. Kelly sought preliminary and permanent injunctions to enjoin the HOA from removing the trees.

On August 14, 2018, Kelly filed an ex parte application for a temporary restraining order and an OSC re preliminary injunction to enjoin the removal of the trees in two planters outside her unit (Planters 3a and 3b). These planters contained nine cypress trees—approximately 30 to 40 feet tall—two lemon trees, and four fig trees. She argued that the proposed project was a capital improvement and the CC&Rs required the Board to obtain approval for the project from a majority of the HOA voting members. Kelly also cited to the Open Meeting Act in support of her contention that the Board's closed meetings on the proposed project violated the Civil Code. In support of the application, she submitted the declaration of architect Dean Vlahos who stated he found no evidence the planters near Kelly's unit caused leaks in the garage, and that removal of the trees would not solve the water leakage.

In opposition, the HOA argued that the proposed work did not constitute a capital improvement and thus, the HOA did not

3

need membership approval to remove the trees. The HOA further argued it was within its right to hold "closed executive sessions" on the waterproofing and landscaping issues because Kelly had threatened litigation. According to the Board, it had conducted a reasonable inquiry into the proposed work and its decision to remove the trees was supported by experts in water intrusion. In its opposition, the HOA relied on the report of "waterproofing consultant" Mark Vanderslice, who stated that the trees in Planters 3a and 3b were causing leaks in the garage. Vanderslice recommended the removal of all the plants within the planters to allow the planters to be waterproofed.

On August 20, 2018, the trial court granted the temporary restraining order. The TRO enjoined the HOA from removing the trees in front of or adjacent to Kelly's unit, but allowed the HOA to proceed with its landscaping and waterproofing plans elsewhere on the premises.[2]

On August 24, 2018, the Board called a meeting to advise the homeowners about the cost of the waterproofing and landscaping plans. Kelly attended the meeting and voiced her objection to the proposals. At the meeting, the Board voted to approve the waterproofing and landscaping proposals.

On September 28, October 10 and October 11, 2018, the trial court heard testimony from experts on both sides. On November 6, 2018, the court held closing argument and took the matter under submission. Three days later, the court issued a preliminary injunction. It found the Board had authority under

---

[2] The initial TRO enjoined the Board from removing any trees on the HOA premises or implementing any " 'water remediation' efforts," but was then modified to enjoin the Board only from removing the trees around Kelly's unit.

4

the CC&Rs "to perform routine maintenance which includes repair and landscaping." Based on the evidence presented at the hearing, the court made the preliminary finding that the "Board [] conducted a reasonable investigation as to the planters, has acted in good faith, in the best interests of the HOA members, and consistent with the CC&Rs." "However, in examining the interim harm that [Kelly] is likely to sustain if the injunction were denied as compared to the harm that the HOA is likely to suffer if the preliminary injunction were issued, the balance of harms weigh in favor of [Kelly] as to the trees only. The trees are 10–40 years old. To remove them would create irreparable harm. They could not grow back in any of the parties' lifetimes. The HOA may perform all the tasks they need to around the trees but may not remove the [] trees until the trial is completed . . . . [¶] The court further finds that the Board has conducted a reasonable investigation as to the planters, has acted in good faith, in the best interest of the HOA members, and consistent with the CC&Rs. However, in weighing the harm that would be caused, the current evidence weighs in favor of [Kelly's] evidence as to the trees." The HOA filed a timely appeal.

## *DISCUSSION*

### 1. **Test for Issuance of Preliminary Injunction and Standard of Review**

"In deciding whether to issue a preliminary injunction, a court must weigh two 'interrelated' factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction. [Citation.] . . . [¶] The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's

5

showing on one, the less must be shown on the other to support an injunction.  [Citation.]"  (*Butt v. State of California* (1992) 4 Cal.4th 668, 677–678 (*Butt*).)

"This is especially true when the requested injunction maintains, rather than alters, the status quo."  (*King v. Meese* (1987) 43 Cal.3d 1217, 1227.)  When "the trial court is presented with evidence on the two factors in both cases but fails to make express findings, we presume that the trial court made appropriate factual findings [citation] and review the record for substantial evidence to support the rulings."  (*14859 Moorpark Homeowner's Assn v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1402 (*14859 Moorpark*).)

In determining whether the plaintiff will suffer interim harm, courts have considered the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo.  (See *14859 Moorpark*, *supra*, 63 Cal.App.4th at p. 1402.)  However, a "trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim."  (*Butt*, *supra*, 4 Cal.4th at p. 678.)

"Generally, the ruling on an application for a preliminary injunction rests in the sound discretion of the trial court.  The exercise of that discretion will not be disturbed on appeal absent a showing that it has been abused.  [Citations.]"  (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286; see also *SB Liberty, LLC v. Isla Verde Assn., Inc.* (2013) 217 Cal.App.4th 272, 281.)  "When the superior court *grants* a preliminary injunction, the restrained party need only show that the superior court abused

6

its discretion as to one of the two factors." (*Smith v. Adventist Health System / West* (2010) 182 Cal.App.4th 729, 749.)

"The trial court's order on a request for a preliminary injunction 'reflects nothing more than the superior court's evaluation of the controversy on the record before it *at the time* of its ruling; it is not an adjudication of the ultimate merits of the dispute.' [Citations.]  The preliminary injunction is intended to 'preserv[e] . . . the status quo until a final determination of the merits of the action.' [Citation.]" (*People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 283.)

"In reviewing an order granting a preliminary injunction, we do not reweigh conflicting evidence or assess witness credibility, we defer to the trial court's factual findings if substantial evidence supports them, and we view the evidence in the light most favorable to the court's ruling.  [Citation.]" (*City of Corona v. AMG Outdoor Advertising, Inc.* (2016) 244 Cal.App.4th 291, 298–299.)

## 2.    Interim Harm

The trial court found that removing the trees would cause Kelly the greater interim harm because the trees were 10 to 40 years old and would not grow back in her lifetime.  This finding was supported by Kelly's declaration that the trees provided her with privacy and shade, protected her from intruders, and created a sound barrier.

The HOA argues that Kelly would suffer no harm because the HOA intended to replace the removed trees with "similarly beautiful" trees.  The trial court found that any new trees would not reasonably substitute for the old ones—the trees could not grow to their current height in Kelly's lifetime.  Without the preliminary injunction, the HOA would proceed to remove the

trees, and Kelly would have no reason to continue to litigate her claims for injunctive relief. Were the HOA to remove the trees immediately, a trial on the HOA's right to do so would be pointless.

The HOA also argues that it suffered the greater interim harm,[3] namely "the continuing water intrusion into the subterranean garage."[4] The HOA does not dispute that it failed to make this argument before the trial court. (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.)

---

[3] We observe that trial was set on a date several months after the preliminary injunction was issued. It is now two years since the preliminary injunction took effect. The HOA's argument that it has suffered grave interim harm is undercut by its choice to appeal a decision that necessarily led to the extension of the injunction instead of addressing the merits at trial. (Cf. *People v. Uber Technologies, Inc.*, *supra*, 56 Cal.App.5th at p. 303 [in an appeal of a preliminary injunction, appellant sought expedited briefing schedule].)

[4] The HOA also argues that the "security of [the HOA] and other homeowners continues to be compromised because installation of the safety fence and cameras could not occur without moving the trees." In support of this point, the HOA cites to two declarations it submitted to the trial court. Lynn McCarthy, the president of the Board of Directors, declared that "we are installing security cameras and intend to install a metal fence atop the preexisting stucco wall." Martha Weller, a member of the Board of Directors, stated that "Kelly has fought the community on numerous occasions over the past six years to not put a security fence and security cameras in the common area in front of her townhome." Neither declaration shows that the court's preliminary injunction prevented the HOA from installing a fence and security cameras.

8

Assuming the argument is not waived, Vlahos's declaration was substantial evidence the planters outside of Kelly's unit did not cause leaks in the garage.

We conclude the trial court did not abuse its discretion in finding that the interim-harm factor weighed heavily in Kelly's favor. We also observe that the injunction preserves the status quo pending trial. (See *Brown v. Pacifica Foundation, Inc.* (2019) 34 Cal.App.5th 915, 925.)

**3. Likelihood of Success on the Merits**

We turn next to the potential-merit factor, and whether Kelly showed a likelihood of prevailing on the merits of any of her claims. The HOA argues that the court's findings in favor of the HOA preclude any possibility that the trial court impliedly found Kelly could prevail on the merits of her claims. The trial court found that the HOA acted consistent with the CC&Rs, pursuant to a reasonable investigation, in good faith, and in the best interests of the HOA members. These findings meet the criteria set forth in *Lamden v. La Jolla Shores Clubdominiun Homeowners Assn.* (1999) 21 Cal.4th 249 (*Lamden*) for judicial deference to a homeowners association's decision about maintenance or repair of a development's common areas. The HOA argues the proposal to remove the trees amounted to a matter of "ordinary maintenance" entitled to deference under *Lamden*. Under this reasoning, the HOA says, the trial court was required to defer to the HOA's decision about removing trees in Planters 3a and 3b, and by extension, there was no likelihood Kelly could prevail on any of her claims. We first address this argument as it applies to Kelly's claims for breach of contract, nuisance and declaratory relief; we address separately Kelly's claim for violation of the Open Meeting Act.

9

*a.    Breach of Contract, Nuisance and Declaratory Relief*

Kelly's breach of contract and declaratory relief claims are based on the HOA's alleged failure to obtain homeowners' approval for what Kelly contends was a "capital improvement"— the removal of the trees in Planters 3a and 3b.  The nuisance claim alleges that the Board's plan unreasonably interfered with her enjoyment of her property.  In the Board's view, there was no showing Kelly could prevail on these claims because the trial court's *Lamden* findings require the court to defer to the Board's decision to excavate the planters.

In *Lamden*, a homeowners association chose to spot treat an infestation of termites in the development's common area instead of fumigating for termites.  (*Lamden, supra*, 21 Cal.4th at p. 253.)  One of the homeowners in the development sued, arguing that the association should have fumigated.  (*Id.* at pp. 254–255.)  She alleged the association had failed to adequately maintain and repair the common areas as required by the CC&Rs and the Civil Code.  (*Ibid.*)  The trial court deferred to the Board's decision to spot treat rather than fumigate.  (*Id.* at p. 256.)

The Supreme Court agreed with the trial court and announced a rule of "judicial deference" to the ordinary maintenance decisions of homeowner associations:  "Where a duly constituted community association board, upon reasonable investigation, in good faith and with regard for the best interests of the community association and its members, exercises discretion within the scope of its authority under relevant statutes, covenants and restrictions to select among means for discharging an obligation to maintain and repair a development's common areas, courts should defer to the board's authority and presumed expertise." (*Lamden, supra*, 21 Cal.4th at p. 253.)

10

Here, the trial court's preliminary findings that the Board acted upon reasonable investigation, in good faith, in the best interests of the HOA members, and consistent with the CC&Rs met the *Lamden* criteria for deference to the Board's decision to remove the trees as part of a plan to stop the planters from leaking. *Lamden* aside, the trial court's finding that the HOA acted in compliance with the CC&Rs is inconsistent with the breach of contract and declaratory relief claims' allegations that the HOA violated the CC&Rs by failing to obtain the homeowners' approval for a capital improvement.

The *Lamden* findings appear inconsistent with a finding that Kelly could succeed on the merits of her nuisance claim. To establish a private nuisance, the plaintiff must show an *unreasonable* interference with her use and enjoyment of the land. (See *Monks v. City of Rancho Palos Verdes* (2008) 167 Cal.App.4th 263, 303.) " 'The primary test for determining whether the invasion is unreasonable is whether the gravity of the harm outweighs the social utility of the defendant's conduct . . . . Again the standard is objective: the question is not whether the particular plaintiff found the invasion unreasonable, but "whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable." ' [Citation.]" (*Ibid.*) Here, the court found the HOA made a decision in the best interests of the homeowners. In other words, the decision to remove the trees in order to prevent water intrusion into the garage served the social utility of the homeowners, including Kelly. In light of this finding, the trial court reasonably concluded that Kelly was not likely to prevail on the merits. (See *Lamden, supra*, 21 Cal.4th at p. 269 [" 'anyone who buys a unit in a common interest development with

11

knowledge of its owners association's discretionary power accepts "the risk that the power may be used in a way that benefits the commonality but harms the individual." ' "].)[5]

b.     *Violation of the Open Meeting Act*

Our analysis of the likely success on the merits of the Open Meeting Act claim is different.  We start by being mindful of *Lamden's* limitations.  "It is important to note the narrow scope of the *Lamden* rule.  It is a rule of deference to the *reasoned decisionmaking* of homeowners association boards concerning ordinary maintenance.  It does not create a blanket immunity for all the decisions and actions of a homeowners association." (*Affan v. Portofino Cove Homeowners Assn.* (2010) 189 Cal.App.4th 930, 940.)  If Kelly's claims merely raised the issue of whether the HOA had adequately maintained and repaired the common areas, the court's findings were inconsistent with any implied finding that she was likely to prevail on the merits of this claim.  Kelly's claims, though, are not limited to routine repair and maintenance decisions by the Board.

Kelly's cross-complaint alleged that the HOA violated the Open Meeting Act (Civ. Code, §§ 4900 et seq.) when the Board "took action" on the proposal to remove the trees "at a series of closed meetings which Association members including [Kelly] were not allowed to attend and which did not meet the criteria for

---

[5]     As we have observed, the court's findings that suggested Kelly was not likely to prevail on the merits are only relevant at the preliminary injunction stage.  Preliminary injunction findings do not reflect " 'an adjudication of the ultimate merits of the dispute.' " (*People v. Uber Technologies, Inc.*, *supra*, 56 Cal.App.5th at p. 283.)  Nothing we have said in this opinion is intended to foreclose either party from any argument they might make at trial.

[an] 'executive session.' "  Kelly sought to enjoin the Board from removing the trees under this cause of action as well.

"The Civil Code provisions that require homeowners association boards to hold open meetings and to allow members to speak publicly at them reflect the Legislature's recognition that such boards possess broad powers to affect large numbers of individuals through their decisions and actions."  (*Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 416.)  "Because of a homeowners association board's broad powers and the number of individuals potentially affected by a board's actions, the Legislature has mandated that boards hold open meetings and allow the members to speak publicly at the meetings.  [Citations.]  These provisions parallel California's open meeting laws regulating government officials, agencies and boards.  [Citation.]  Both statutory schemes mandate open governance meetings, with notice, agenda and minutes requirements, and strictly limit closed executive sessions.  [Citation.]"  (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 475.)

Specific provisions of the Open Meeting Act that apply here include Civil Code sections 4910, 4925, 4935, and 4955.  Under Civil Code section 4910, a homeowners board association "shall not take action on any item of business outside of a board meeting."  (Civ. Code, § 4910, subd. (a).)  "Any member may attend board meetings, except when the board adjourns to, or meets solely in, executive session."  (Civ. Code, § 4925, subd. (a).) "The board may adjourn to, or meet solely in, executive session to consider litigation, matters relating to the formation of contracts with third parties, member discipline, personnel matters, or to meet with a member, upon the member's request, regarding the

13

member's payment of assessments, as specified in [s]ection 5665." (Civ. Code, § 4935, subd. (a).) "A member of an association may bring a civil action for declaratory or equitable relief for a violation of this article by the association, including, but not limited to, injunctive relief . . . ." (Civ. Code, § 4955, subd. (a).)

The trial court did not make express findings as to the Open Meeting Act cause of action. We therefore presume the trial court made factual findings to support the potential–merit factor as to this claim. (*14859 Moorpark, supra*, 63 Cal.App.4th at pp. 1402–1403 ["When, as here, the trial court is presented with evidence on the two factors [for the issuance of an injunction] in both cases but fails to make express findings, we presume that the trial court made appropriate factual findings and review the record for substantial evidence to support the rulings"].) The HOA argues that the "trial court's finding that [the HOA] satisfied all factual prerequisites to be entitled to judicial deference will bar *every* cause of action [Kelly] alleged in the [cross-]complaint. . . . [¶] . . . [¶] [The Open Meeting Act claim] only seek[s] declaratory and injunctive relief, neither of which Kelly can show any probability of prevailing because of the rule of judicial deference." (Emphasis added.)

We conclude that judicial deference to a board's repair and maintenance decisions under *Lamden* does not extend to a board's decision to hold closed meetings. The stated justification for the *Lamden* rule was "the relative competence, over that of courts, possessed by owners and directors of common interest developments to make the detailed and peculiar economic decisions necessary in the maintenance of those developments." (*Lamden, supra*, 21 Cal.4th at pp. 270–271.) This relative competence has no bearing on a decision by the Board to exclude

14

a member from attending its meetings.  Indeed, given the wide latitude homeowners association boards have in making repair and maintenance decisions, it is all the more important that homeowners be afforded the opportunity to participate in the meetings at which those repair and maintenance decisions are made.  If homeowners do not have a vote, at least the Open Meeting Act gives them the possibility of input.

Substantial evidence supported the implied finding that the HOA had taken action in closed meetings on its plans to repair the leaks.  Kelly stated in her declaration that the Board held several "executive closed sessions" where it "made decisions about the work," and attached several notices of board meetings and communications written by the community manager indicating the Board had done so.  The HOA, in turn, acknowledged that it had met in closed sessions to "discuss" the waterproofing of the planters.  The HOA did not dispute Kelly's allegation that the Board had taken "action on the Proposed Capital Improvements and the Leak Repair at a series of closed meetings."  (See Civ. Code, § 4910, subd. (a) ["The board shall not take action on any item of business outside of a board meeting"].)[6]

We conclude that the HOA did not meet its burden of showing the trial court abused its discretion in its implied finding that Kelly had a likelihood of prevailing on her cause of action for violation of the Open Meeting Act.

---

[6]     In the trial court, the Board attempted to justify its decision to close one or more meetings to Kelly by pointing out that Kelly had threatened litigation.  The Board does not develop the point on appeal.

## *DISPOSITION*

The trial court's order granting respondent's preliminary injunction is affirmed.  Respondent is awarded her costs on appeal.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

MOOR, J.

16